# Walker *v.* Taylor, Appellant.

*Sale—Warranty—Implied warranty.*

In an action to recover the price of plumbago sold and delivered to defendants where it appears that after plaintiff had shipped seven barrels, one of the defendants visited plaintiff's establishment and saw and examined the stock on hand, from which subsequently ninety barrels were shipped to defendants, the latter cannot allege that the purchase of the seven barrels was a sample order, and that under the Act of April 13, 1887, P. L. 21, an implied warranty arose from it as to the subsequent shipment.

In an action to recover the price of plumbago sold and delivered no implied warranty arises from the knowledge of the seller of the use to which the material was to be applied, where it appears that the seller did not know that the plumbago was to be used in the manufacture of crucibles, although he had general knowledge that the defendants were in that business, but that they also sold plumbago when it did not suit their purpose.

In an action to recover the price of goods sold and delivered binding instructions for plaintiff are proper where the defendants have failed to show any facts from which an implied warranty of quality could be legitimately drawn, and it also appears that they had used all the material purchased, and had not returned, or offered to return any of it.

Argued Oct. 18, 1901. Appeal, No. 58, Oct. T., 1901, by defendants, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1895, No. 678, on verdict for plaintiff in case of William H. Waloer v. Robert J. Taylor and John A. Taylor, trading as Robert J. Taylor & Son. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover the price of goods sold and delivered. Before BIDDLE, P. J.

At the trial it appeared that in September, 1889, plaintiff sold and delivered to defendants seven barrels of plumbago. In

January, 1890, one of the defendants visted plaintiff's plant in Canada and inspected the stock on hand. From this stock ninety barrels were subsequently sold and delivered to the defendants.

Mr. Shattuck for the defendants made the following offer:

I intend to prove by Robert J. Taylor that the graphite purchased from this plaintiff was entirely unfit for use by reason of being of such a kind and character that it could not be used as a component part of the crucibles to be manufactured from it, and that it was, therefore, entirely worthless, and from the standpoint of use, by undertaking to use it the defendant suffered a loss of over $3,000.

Judge Biddle: I cannot see that there is any question arising as to the quality of the goods. The question is of guaranty or warranty. If the man said the sample was out of the same bin, I do not think that means a warranty or anything at all. The complaint is unfitness for the purpose for which it was sent, and you must show there was a warranty for it to be fit for the purpose for which it was to be used.

Mr. Shattuck: I will have to stand on, first, the graphite not being equal to the first seven barrels sent, and second, it was not fit for the purpose sold.

Mr. Schick: I object to the offer.

Judge Biddle: The only defense to this case is to establish fraud or warranty, and from your failure to make an offer of that kind, you have not made out a defense.

Exception for defendant. [1]

" Q. Were you personally present when use was attempted to be made of a portion of the ten tons?"

Mr. Schick: I object.

" Q. How did the ten ton order, so far as the grades five and six are concerned, compare with the seven barrels previously used by you, in regard to the quality of the materials?"

Mr. Schick: I object."

Objection sustained. Exception for defendant. [2]

" Q. What use did you make of the graphite sent you in January, 1890?"

Mr. Schick: I object. Objection sustained. Exception for defendant. [3]

" Q. What was the use for which this graphite had been purchased?"

Mr. Schick: I object.

Judge Biddle: It is the oldest doctrine of the law that the defense to this kind of a case must be either fraud or warranty.

Mr. Shattuck: I have made these offers based on the plaintiff's testimony.

Judge Biddle: I do not think that is any defense at all.

Exception for defendant. [4]


The court charged:

Under all the evidence in this case, your verdict will be for the plaintiff. [5]

Verdict and judgment for plaintiff for $1,306.68. Defendants appealed.


*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions. (5) Above instruction, quoting it.


*Frank R. Shattuck*, for appellant.—The evidence showed an implied warranty: Loyal Hanna Coal & Coke Co. v. Penna. Iron Co., 8 Lancaster Law Rev. 73; Port Carbon Iron Co. v. Groves, 68 Pa. 149; Ulrich v. Stohrer, 12 Phila. 199; Tennessee Lumber Co. v. Garrison, 13 Atl. Repr. 454.


*Rudolph M. Schick*, for appellee.—There was no warranty: Selser v. Roberts, 105 Pa. 242; Carson & McKnight v. Baillie, 19 Pa. 375; Lord v. Grow, 39 Pa. 88.


OPINION BY BEAVER, J., January 21, 1901:

In November, 1889, the plaintiff shipped the defendants from their works in Canada, apparently in the usual course of trade, seven barrels of plumbago known in the trade as No. 6. Subsequently in January, 1890, one of the defendants visited the mines, mills and warehouses of plaintiff and, after an inspection of the material on hand, ordered ten tons of the plumbago of the quality No. 6 and one ton of Nos. 3, 4, 5 and 6 mixed. The shipment as made embraced forty-two barrels of No. 6, twenty barrels of No. 5, ten of No. 4, ten of No. 3, eight of Nos. 3 to 6 mixed—a total of ninety barrels, aggregating 22,982 pounds. The grade contained in each barrel was plainly marked on the

outside. The consignment was all received by defendants and its receipt acknowledged—no objection being made to the overweight or to the fact that the shipment was not in exact accordance with the order, so far as the grade was concerned. The acknowledgment of the receipt of the consignment was made by the defendants by letter dated January 15, 1890. Subsequently on January 23, 1890, defendants wrote another letter in which serious complaint of the quality of the plumbago is made and in which occur these significant statements : " These brands which contain so much mica we cannot use at all and, if we cannot find a market for it, we will hold it subject to your order," and later, " Even the first shipment that you sent us in November of seven barrels was of a better quality than any of the last shipment." There is no allegation that there was any subsequent return or offer to return any of the plumbago and the first shipment was not then claimed to be a sample lot.

We have been thus careful in stating the facts, because a complete understanding of them enables us very readily to dispose of the assignments of error, all of which relate to the rejection of offers of testimony on the part of the defendant as to the use to which the plumbago in question was put, its unfitness for that use and the use for which it had been purchased, and the general instruction to find for the plaintiff.

It is to be observed : 1. There is no charge of fraud in the sale and shipment of the materials which are the subject of controversy. 2. There is no claim of an express warranty as to their quality.

The defendants rely upon an implied warranty which they say arises from two distinct facts : 1. The purchase of seven barrels of plumbago by defendants from plaintiff was a sample order and, under the provisions of the Act of April 13, 1887, P. L. 21, an implied warranty arose as to the subsequent shipment. The difficulty here is that it nowhere appears that this was a sample order and the fact of its having been such is disproved, if that were necessary, by the visit and inspection by one of the defendants who carefully examined the plaintiff's plant and facilities and saw and examined the identical stock from which the latter shipment was made. 2. The plaintiff knew that the material was to be used in the manufacture of

crucibles and this knowledge raised an implied warranty under the well known rule that " if an article is ordered for a special purpose and is sold for that purpose, there is an implied warranty that it is for that purpose: " Port Carbon Iron Co. v. Groves et al., 68 Pa. 149; McCormick v. Nicholson, 17 Pa. Superior Ct. 188. But the defendants did not bring themselves within the rule. Not only was the purchase made upon their own inspection but their cross-examination of the plaintiff showed not only that he did not know that the plumbago was to be used in the manufacture of crucibles, although he had general knowledge that the defendants were in that business, but that they also sold plumbago when it did not suit their purpose, and this is borne out by their own letter hereinbefore referred to.

Having failed to show any facts from which an implied warranty could be legitimately drawn, the. defendants' offers were all properly rejected and, having used all the material purchased and no return or offer to return any of it having been shown, the instruction by the court to find for the plaintiff was proper.

Judgment affirmed.